PETTY
*vs.*
MALIER, &c.

5. It is too late for a guardian for the first time to rsk compensation on a bill of review where no such claim had been set up in the original case.

## Petty *vs.* Malier, &c.

### APPEAL FROM ANDERSON CIRCUIT.

ORD. PET.

Case 13.

1. A woman entitled to dower in the lands of a former husband, who has not had dower assigned to her, has no such interest therein as is liable to sale under execution against a subsequent husband. (5 *J. J. Marshall*, 15.)

2. Under the Code of Practice a defendant may, in his answer, in an action to recover the possession of land, set up and rely upon an equitable defense, such as a claim to the land by purchase by executory contract; in such case either party may have the case transferred to the equity side of the docket; if this be not done, the issue made on such defense is not to be disregarded, but must be disposed of before plaintiff can have judgment; and such issue must be disposed of according to the principles which may be involved, either of law or equity.

3. Where legal as well as equitable matters of defense arise upon the issues made in a case commenced at law, the legal should be tried by a jury, and the court may submit matters of fact arising upon the equitable issues to a jury, where such issues have not been transferred to the equity docket; in such cases the finding of the jury should be special, to enable the court to decide the case.

4. The husband whose wife is entitled to dower in land of which he has had no seizin during coverture, has no interest after the death of the wife.

5. One who enters upon land as tenant, and afterwards assume a hostile attitude, is not entitled to notice to quit.

PETTY
vs.
MALIER, &c.

6. On the death of one owning land, leaving a mother and sisters and brothers, and half sisters and brothers, the half sisters and brothers inherit half portions with the mother, and sisters and brothers of the full blood.

Case stated.

This suit was brought originally in the name of Polly Malier, to recover a tract of 130 or 140 acres of land lying in Anderson county, in the possession of Samuel B. and William B. Petty. The plaintiff recovered a judgment, which was reversed by this court, upon the ground mainly that the husband of the plaintiff had not united in the suit. On the return of the case to the Circuit Court, the petition was amended and Wesley Malier, the husband, made a plaintiff. Subsequently Mrs. Malier died, and the suit was revived in the name of her children, and a trial being had, a verdict and judgment was recovered by the plaintiff, and the defendants have appealed.

The evidence in the case conduced to prove that Eleanor Petty intermarried with Frederick Cogswell in December, 1809. That in 1810 he purchased the land in contest from one Gist, and commenced forthwith to improve it, and moved upon it in 1811. He was in the army during the years 1812 and 1813, and returned and died in 1814. Samuel B. Petty, the brother of Mrs. Cogswell, took possession of the greater part of the personal estate of Cogswell, amounting to two hundred and seventy or eighty dollars, and in 1816 had it appraised. Cogswell left two children only, Diana and Polly. The former arrived at the age of twenty-one, and died without ever having been married, leaving her mother and sister still living. Polly married Wesley Malier, and died leaving six children. Mrs. Malier was under twenty-one years of age when she married, and all her children were infants at her death.

Mrs. Cogswell, about the year 1817, married Oliver Cromwell, and they continued to occupy the land which had been improved by Cogswell during his life-time, Cromwell and wife removed to Indiana,

but at what time does not certainly appear. Before their removal Cromwell leased the land to one Sherwood for a term of years. After remaining in Indiana a short time, Cromwell and wife separated, and she returned to Anderson county before the expiration of the lease to Sherwood. After Sherwood's lease expired, old Mrs. Petty took possession of the land as the tenant of Mrs. Cromwell. About 1832 Samuel B. Petty, the brother of Mrs. Cromwell, set up some claim to the land and forcibly took possession of one of the fields. Before this possession taken by Samuel B. Petty there does not appear to have been any interruption to the possession taken by Cogswell in the year 1811.

The appellant, Samuel B. Petty, claims right to the land by purchase under a sheriff's sale made in 1827, in virtue of a judgment and execution in favor of Petty, against Oliver Cromwell, rendered by the Woodford Circuit Court in an action of slander, and claims that Cromwell had title to the land in consequence of a judgment of the Federal Court for Kentucky in an action of ejectment in the name of Story against sundry persons, of whom Cromwell was one, and that Cromwell made a compromise, and purchased from one Phillips, who professed to be the agent of the plaintiff in that suit. The jury rendered a verdict for two-thirds of three-fourths of the land, &c. A motion in arrest of judgment was made by appellant and overruled, and defendants have appealed.

*G. W. Kavanaugh*, for appellants—

As the plaintiffs have no paper title deduced of record, it becomes important for them to show an unbroken possession of twenty years. But this record shows a judgment in ejectment for the land in controversy in favor of Willis, as early as 1823 ; that Cromwell was claiming to hold under Willis as early as 1825 ; and though his attitude was that of trustee for the children of Cogswell, yet according to plain-

tiff's own showing he acquired the legal title with a beneficial interest at least to the extent of the money paid by him to Phillips ; and he was moreover seized in right of his wife of her dower interest in the land as far as the same belonged to Cogswell, her former husband, which was probably vendible under the execution in favor of Petty; but be that as it may, Petty, in virtue of the sale by the sheriff, should be regarded as taking possession at the expiration of Sherwood's lease, under the title of Cromwell, acquired from Phillips, as the claim of Cogswell was then of no value, as was manifested by the success in the action of ejectment. Petty sent to Indiana and brought his sister and her children back to Kentucky, and placed them on his land. The facts show that she then did not assert title under Cogswell, but proposed to buy the land herself. The possession of Cogswell was broken at the sheriff's sale of the land.

The proof shows that Mrs. Cromwell was present when the sheriff's sale took place; that she afterwards took possession under Petty's purchase. It was agreed at the sale that Petty should purchase for her benefit.

There is no proof that Petty was guilty of any fraud in purchasing the land in 1835. The proof shows a full price paid for it. If he had funds in his hands as administrator of Cogswell, it was afterwards paid, and receipts given for it by the distributees.

If plaintiffs are entitled to any recovery, it can only extend to one-third, because the mother is entitled to one-third during life, Diana entitled to one-third, both of whom sold to Petty, leaving only one-third to which the plaintiff could be entitled in any event. And if the purchase of Petty is not available, the interest of Diana descended to the mother, brothers, and sisters. Then they are entitled to less than three-fourths of two-thirds, because the half-brothers and sisters of Diana inherited from her as well as Mrs.

Malier, and she had such as shown by Mrs. Jewell, formerly Mrs. Cogswell.

But as Petty purchased the land, and Malier and his wife received the consideration, they cannot recover without refunding the purchase money, or their abandonment of the contract of sale. (*Dennis vs. Warden*, 3 *B. Mon.* 173.) According to which authority the plaintiff ought to fail in the action because notice was not given before suit was brought.

The plaintiffs proceeded for the land and for rents, profits, and damages for withholding the same, under section 111 of the Code. Defendants conceive that section 14 of the Code requires that they present all these defenses, legal and equitable, and that by section 10 the equitable issues in a case of this kind may be transferred to the equity docket at the option of either party; but, if not transferred, that the trial should proceed with all the issues, upon the same principles of law as if in equity.

In rescinding the contract as to Mrs. Malier's part of the land, plaintiffs ought to restore the consideration, and pay for improvements as far as they enhanced the value of the land at this time, and that neither rents nor interest should be given until plaintiffs had notified defendants of their intention to rescind. (*Taylor vs. Porter*, 1 *Dana*, 423.)

If rents should be recovered for five years before suit brought, they should be estimated according to their value when the property came into the possession of Petty. (*Haskins vs. Spiller*, 3 *Dana*, 575; *Hawkins vs. Beall*, 4 *Dana*, 6.) It is obvious that these principles did not govern the jury in their verdict, and the rents are estimated too high. The jury have disregarded the purchase made by Petty, and leave the plaintiff in a condition in which they may at a future day recover the other half of the land. It is evidently upon the idea that she has one-third as dower-right for life, and also inherited one-half of the interest of Diana.

The second instruction of the court for plaintiff assumes that the sale to Petty was only a compromise, and that it imposed no obstacle to a recovery. This instruction is misleading, and ought not to have been given in that form.

According to the sixth instruction, the jury were to estimate the rents for five years before suit brought; consequently, according to the value of the rents during those five years, instead of its condition when Petty received it; while the seventh instruction virtually requires rents to be given during the whole period of Petty's occupancy, if anything is allowed for improvements. And the eighth instruction assumes and is based upon statements of Petty which were never made by him; it is not to be found anywhere in the record, save in this instruction, that Petty said he intended to keep the plaintiffs out of the land, and that they had no right or claim to it.

The instructions moved for by defendants, and based upon the record of the suit in ejectment, and Malier's bankruptcy, were overruled; before said records were excluded as evidence, which accounts for their being in the record when they ought not to have been.

The modification to the twelfth instruction of defendants is erroneous, because it leads the jury to believe that the purchase of Petty was fraudulent, and if it was, that the consideration ought not to be refunded.

To the thirteenth instruction there are still greater objections. It requires the jury to disregard the purchase of Petty, unless the widow and children executed and sealed and delivered a regular deed, when the equitable right and the issues thereon, as well as the legal right, was before the jury and any instrument of writing evidencing the relinquishment of right by the plaintiffs was as efficacious as a deed.

By the decree in bankruptcy, under the third section of the bankrupt act, all property and rights of property of Malier were vested in his assignee as ful-

ly as could have been done by any deed of convey-
ance, and his assignee had the rights to which he had
been entitled, and he had "the right to sue for and
defend the same," without annulling or destroying
any lawful rights of the wife, as secured by the pro-
viso to the second section of the act.   His interest in
his wife's land was a legal right, subject to be seized
and sold under execution for the payment of his
debts, in defiance of her rights, and was subject to his
debts in bankruptcy to the same extent.  (2 *Kent's
Com.* 130–1; 4 *Ib.* 28.)

By marriage, Cogswell became entitled to the pos-
session of his wife's land ; on the birth of a child
alive he became tenant by the curtesy *initiate*, on the
death of the wife *consumate;* but in this State some
act of ownership is necessary on the part of the hus-
band.   In this case the husband collected the money
due to his wife for the land, and became a voluntary
bankrupt, when the decree in bankruptcy operated
as a perfect conveyance of all his rights to his as-
signee.   The right never after became vested in Ma-
lier, and the finding is wrong.

The inventory ought to have been excluded from
the jury.   We claim a reversal.

*Thos. N. Lindsey*, on the same side—

The verdict in behalf of Wesley Malier is unwar-
ranted, and the judgment thereon should not have
been rendered, for these reasons :  1. The father and
children of the deceased wife cannot be united in a
suit for the recovery of the land in contest.   If, on
the death of Wesley Malier, all right in him to sue
ceased, because of the fact of his never having had
any possession of the land in the life-time of the wife
as gave him a curtesy, then the suit as to him ought to
have abated or been dismissed, or, in rendering judg-
ment, it ought to have been in favor of defendant, as
regarded any claim of Wesley Malier.   If the peti-
tion is to be treated as at all analogous to the old
ejectment, and Wesley Malier had no title, it would

have been error to have found for plaintiff on a demise by him; or if he was tenant by the curtesy, then his children had not the right to maintain the suit, as the right would be in him.

2. The plaintiff, to make out title, proved a possession by Cogswell, the first husband of Mrs. Jewell, as far back as 1811, and that he married the mother of Mrs. Malier as early as 1809, and claims the land under a purchase from a man by the of Gist, and lived on the land until his death, in 1814, leaving two children, Diana, and Polly, late Mrs. Malier, who died since the term, before the suit was tried. Cromwell, in 1817, married Mrs. Cogswell and moved upon the land with his wife, and lived there until 1826. A suit was instituted in the Circuit Court of the United States by Willis, under a patent for twelve thousand seven hundred acres, against Cromwell and others, embracing the land in controversy. The defendants, or a part of them, being satisfied that Gist's title was not good, compromised; others suffered judgments to go by default. Cromwell compromised with Willis' agent for the benefit of Cogswell's children, by paying $100 and taking a deed from Phillips, but with the understanding that whenever Cogswell's children should pay back the $100 he would surrender the land to them. Cromwell rented the land to Sherwood, and moved to Indiana; but before Sherwood's lease expired the land was sold under execution in favor of S. B. Petty against Cromwell, for $115 and costs. Mrs. Cromwell had returned to Kentucky before this sale took place, having separated from her husband. Cromwell sent money to buy the land, and it would have been so bought in for him, but S. B. Petty said he intended to buy the land for the children. The land was then worth about $2 per acre; in 1834, Rhodan and S. B. Petty were in possession of the land. Mrs. Cromwell married Jewell in 1832; in July, 1832, Mrs. Jewell and her husband brought a writ of forcible entry and detainer against Petty, who had pos-

session of part of the land, and failed in their suit; from 1832 until this suit was brought, S. B. Petty had possession of the land, claiming it as his own.

The plaintiffs attempted to make out their right to recover upon alleged possession of twenty years. The defense is that the plaintiffs had no title, and that there was not a continued unbroken possession of twenty years; that the recovery by Willis against Cromwell, &c., in the Circuit Court of the United States; the sale by the widow and heirs of Cogswell to S. B. Petty; the release of title by them to him, and Petty's possession for more than twenty years, divested plaintiff's title.

The whole case presents a strange combination of legal and equitable subjects for adjudication in the same suit, as well rights on the part of plaintiffs as matters and rights relied on in the defense.

But supposing that the whole may be tried at law under the Code, a few suggestions will be made why the verdict and judgment ought not to stand.

Though the proof of plaintiff conduces, to some extent, to show a possession as early as 1811, there is also proof to show that the title of Gist was called a tax title, and that it was found to be of no account. The possession may have continued until 1825 under Cogswell's first entry, but then Willis' judgment against Cromwell was recovered before any title was acquired by a twenty years' possession, and it was competent for Cromwell to buy Willis' claim, and hold under it without waiting for an actual eviction. He was the tenant in possession, and the judgment was against him. Was this not such an interruption of the possession as would break the continuous possession? The renting of Cromwell to Sherwood seems to have been in his own name, and before the lapse of twenty years. Even if Sherwood's possession was regarded as under Cogswell, the land was sold as Cromwell's, he then claiming to hold it under Willis, before the twenty years had run, and Petty took possession under his purchase.

If the sale is void as to Cogswell's heirs, the money paid by Cromwell for the title of Willis gave him such an interest in the land, as liable to Petty's execution, as a court of equity would regard, and Cromwell, according to plaintiff's proof, was to have that advance refunded to him. That sum, added to the $300 paid to the widow and heirs, would make the value of the land, and Petty ought not to be deprived of the land until he is made whole.

Though Mrs. Malier may have been an infant when the sale was made, she failed to disaffirm it when she arrived of full age, and objected to the suit.

The fact show that if Cromwell had not purchased, the land would have been lost to Cogswell's heirs; and will the court, after the step-father secured it, and that under a promise to be reimbursed, compel a surrender of the land without any offer to comply with the condition on which they were to have the land back.

The court erred in its instruction in regard to the extent of the interest of plaintiff in the land, even supposing the right of recovery was established.

The jury failed to give Petty any credit for the money paid by Petty to Mrs. Malier, as the court decided it was proper to do.

The dower right of Mrs. Cromwell was subject to sale under execution, and as there is not now, even at this day, any evidence that Cromwell is dead, Petty still holds that right.

A reversal is asked.

*J. Harlan,* for appellees—

The question is presented, whether any of the matters set up by the defendant are sufficient to bar a recovery of a portion of the land to which Mrs. Malier's children claim title.

1. The defendant contends that Samuel B. Petty became vested with a title to the land by a purchase under a sheriff's sale, made in the year 1827, in virtue of a judgment and execution in favor of Petty

against Oliver Cromwell rendered by the Woodford Circuit Court in an action of slander, and that Cromwell had title to the land in consequence of a judgment rendered by the Federal Court in an action of ejectment in the name of one Story against sundry persons, of whom Cromwell was one ; and that Cromwell made a compromise and obtained a deed from Phillips, who professed to be agent for the claimants.

I contend that Samuel B. Petty obtained no title under his purchase at the Sheriff's sale, for the following reasons : 1. There is no execution in the record showing by the officer's return that any sale took place. 2. The sheriff's deed does not show that any valid sale ever took place. 3. The sheriff's deed is not signed by the officer who professes to make it. 4. It recites an execution from the *Versailles* Circuit Court when there is no such court known to our laws. 5. If Story had title to the land he made no conveyance, by himself or attorney, to Cromwell. 6. The sheriff's deed is, in other respects, defective. From all which it is insisted Cromwell had no vendible interest in the in the land ; or if he had, the sale of his interest did not affect the claim of the children of Mrs. Malier.

If I am right in these positions, Petty had no title to the land, and, by taking forcible possession of a portion of it, made himself a tort feasor.

2. The defendant gave evidence of a purchase from Mrs. Jewell (formerly Mrs. Cromwell,) and her children of their interest in the land, and the execution of some writing evidencing the agreement. This contract, it was contended, was made in the year 1835, when Mrs. Malier was under twenty-one years of age, and consequently was not binding on her, as she labored under legal disability until her death. Besides, there was evidence conducing to prove that the arrangement and pretended purchase was fraudulent, and that S. B. Petty paid or agreed to pay money which belonged to the heirs of Cogswell ;

and whether it was so or not was properly left to the jury.

3. The rejection of the record in bankruptcy is relied upon as a ground for reversal.

Whatever effect should be given to that record, so far as Wesley Malier is concerned, could not affect the rights of Mrs. Malier's children. Wesley Malier had not been in actual possession of the land and no right of tenancy by the curtesy attached which could pass to the assignee in bankruptcy. But if the assignee in bankruptcy was ever invested with any title or interest in the property in contest, his claim was barred long before this action was commenced. The decree declaring Wesley Malier a bankrupt, was made June 12, 1843. The 8th section of the Bankrupt Acts, (*page* 601, 3 *vol. Stat. Laws Ky.*) among other things, provides, "and no suit at law or bill in equity shall, in any case, be maintainable *by or against such assignee*, or by or against any person claiming an adverse interest touching the rights of property aforesaid, in any court whatsoever, unless the same shall be brought within *two years after the declaration and decree of bankruptcy*, or after the cause of suit shall first have accrued." This action was commenced ten years after the decree in bankruptcy.

4. The rejection of the record of the Federal Court is also complained of. Neither Malier, his wife or children were parties to that record, and cannot be affected by any adjudication in the suit. Process was served on Oliver Cromwell and judgment was rendered against him by default. He, however, continued in the possession of the land until his removal to Indiana, and left Sherwood, his tenant, in possession, as heretofore stated. This record interposed no obstacle to a recovery in this action as between Malier and Samuel B. Petty. The only connection that Petty pretended to have with that record was his purchase at the sheriff's sale. I have already shown that nothing passed to Petty under that sale. Noth-

ing that was said or done on the day of that sale between Petty and Mrs. Cromwell and Wash, or any one else, in the least affected the right of the plaintiffs in this action. They stand upon the original title of Cogswell, acquired by his purchase from Gist, and taking possession of the premises in 1810 or 1811. If that possession was continued for twenty years, as the evidence conduced to prove, their title was complete.

5. The defendant below cannot claim the benefit of any *equitable* interest in the premises, because, upon filing his answer, he should have moved to have the case transferred to the equity docket.

6. The question of rents and improvements was presented by the defendant in his amended answer, and the jury properly took that matter into consideration. Plaintiff released one-half of the amount found by the jury before the motion for a new trial was disposed of.

I have noticed all the points which I deem material.

Upon the whole case, it seems to me that justice to both parties requires that there should be an end to this troublesome and vexatious case.

Judge SIMPSON delivered the opinion of the Court—    June 19.

Numerous questions are presented in this case, none of which are of difficult solution.

The possession of the land in controversy, which was commenced by Cogswell in 1810, was continued uninterruptedly during his life, and by his widow and children after his death, until S. B. Petty, in the year 1832 or 1833, set up claim to the land, and took possession of it, under the purchase he had made at sheriff's sale. This possession, under Cogswell's claim, was not disturbed by the judgment in ejectment in the Federal Court against Cromwell, the husband of the widow. This judgment was never executed, no actual eviction took place under it, and no change of possession was effected by it. (*Smith vs. Hornback*, 4 *Litt.* 232.) The purchase made by

Cromwell was for the benefit of the widow and heirs of Cogswell, and was not intended to change the character of the possession held by them. And even if Cromwell had intended to purchase and hold under the title of the lessor of the plaintiff in that action, although the judgment of eviction might have authorized him to do it, still he could only have held the land against Cogswell's heirs, who were not parties to the judgment, by showing that he had acquired the paramount title by his purchase, whereas he does not appear to have obtained any title whatever.

1. A woman entitled to dower in the lands of her husband, who has not had dower assigned to her, has no such interest therein, as is liable to sale under execution against a subsequent husband. (5 *J. J. Marshall*, 15.)

Cromwell did not have any title to the land, subject to execution. He did not acquire any title by virtue of his purchase under the judgment in ejectment, having only got a deed from Phillips, who is not shown to have had any authority from the lessor of the plaintiff to convey his title. His wife had no interest in it which was liable to execution, and consequently he had none in her right that could be sold under an execution against him. Although his wife was entitled to dower in the land of her deceased husband, yet as dower had never been assigned, she had only the right of *quarantine*, which cannot be sold under execution. (*Shield's heirs vs. Batts*, &c. 5 *J. J. Marshall*, 15.) Petty, therefore, did not acquire any right to the land by his purchase at the sheriff's sale.

2. Under the Code of Practice a defendant may, in his answer, in an action to recover the possession of land, set up and rely upon an equitable defense, such as a claim to the land by purchase by executory contract; in such case either party may have the case transferred to

As, however, he seems to have purchased the land from the widow and the two children of Cogswell, he had a right to set up and rely upon that purchase, by way of defense to the plaintiff's action, whether his purchase was executed or executory merely. Under the Code, the defendant has a right to rely upon equitable as well as legal defenses. Either party may move to transfer an equitable issue, presented by the pleadings, to the equity docket, but if no such motion be made, it does not follow that the issue is to be disregarded. It must be disposed of by the court before a judgment can be rendered for plaintiff. If, then, the contract of purchase was not

procured by fraudulent representations, it constituted a valid defense to the action, so far as the plaintiffs asserted a right to any of the land which had belonged to Dinah Cogswell, whether it was executed or only executory; and if it had been procured by fraud, still if it were rescinded on that ground, the purchaser would be entitled to the repayment of his purchase money, to the extent at least of the plaintiff's recovery against him, subject, however, to an off-set, on account of any equitable demands the plaintiffs may have against him arising out of the contract. And if the plaintiffs recover on the ground that the contract was not obligatory on their mother, because she was an infant when she entered into it, the defendant, being a purchaser, has a right to have the purchase money, for her interest in the land, refunded, before he can be deprived of the possession, if, upon a settlement according to equitable principles, there be any part thereof still due to him. This equitable defense presented by the defendants' answer was disregarded by the Circuit Court, and the defendant was only permitted to rely upon such matters as constituted a legal defense to the action. In this respect the action of the court was erroneous.

Where, as in this case, both legal and equitable defenses are relied upon, the former should be tried by a jury, and the court may also submit to the jury for its decision such matters of fact as are involved in the equitable issue, when such issue has not been transferred to the equity docket, and no motion for that purpose has been made by either of the parties; but the finding of the jury in relation to the facts involved in the equitable issue should be special, to enable the court to render such a judgment, thereon as might be equitable and proper between the parties.

Wesley Malier acquired no right to the land in contest by his marriage. He was never actually seized thereof during coverture, and his wife having died, he has no interest in it whatever. The court

PETTY
*vs.*
MALIER, &c.

the equity side of the docket; if this be not done, the issue made on such defense is not to be disregarded, but must be disposed of before plaintiff can have judgment; and such issue may be disposed of according to the principles which may be involved, either of law or equity.

3. Where legal as well as equitable matters of defense arise upon the issues made in a case commenced at law. the legal should be tried by a jury, and the court may submit matters of fact arising upon the equitable issues to a jury, where such issues have not been transferred to the equity docket; in such cases the finding of the jury should be special, to enable the court to decide the case.

PETTY
*vs.*
MALIER, &c.

4. The husband whose wife is entitled to dower in land of which he has had no seizin during coverture, has no interest after the death of the wife.

5. One who enters upon land not as tenant, but assumes a hostile attitude, is not entitled to notice to quit.

6. On the death of one owning land, leaving a mother and sisters and brothers and half sisters and brothers, the half sisters and brothers inherit half portions with the mother, and sisters and brothers of the full blood.

did not therefore err in rejecting the record of his bankruptcy. But when the suit was revived in the name of the heirs of his wife, his name should have been stricken out as one of the plaintiffs, as after the death of his wife his interest in the land ceased and determined. The plaintiffs were proved upon the trial to be the children and heirs-at-law of Polly Malier, deceased, and it thus appeared that the suit had been properly revived in their names.

As Petty had entered into the possession of the land in contest, under his purchase at the sheriff's sale, his subsequent purchase from the widow and heirs of Cogswell did not entitle him to notice to quit. He had acquired his possession illegally, and not by virtue of his purchase from them. He denied the validity of their right, although he purchased it; and therefore his hostile attitude deprived him of any right to be regarded as a *quasi tenant* of the plaintiffs.

If, at the time of the death of Dinah Cogswell, her mother had any children living, the issue of her marriage with Cromwell, they would be entitled to an interest in the real estate which belonged to their half-sister, in conjunction with the mother and the full sister. The two latter would have a right to full, and the others to half shares. The right of these children was not regarded in the court below in ascertaining the interest of the plaintiffs in the land in controversy, and in this respect also, the action of the court was erroneous.

Wherefore, for the errors indicated in this opinion, the judgment is reversed, and cause remanded for a new trial, and further proceedings consistent with this opinion.